Good morning. May it please the court. Justice Posner, Justice Bauer, Justice Sykes, counsel, your honors, my name is John Ligutke and I represent Charles Lemle. And Mr. Lemle is asking this court to reverse and remand, reverse the four point enhancement to lower court imposed under the guidelines section 2k 2.1b 6b and to remand that with instructions. The facts are briefly in January 1st 2014, defendant Lemle, while in pretrial release for another case, discharged a handgun into alley on New Year's Eve. He was immediately identified, chased and apprehended by Chicago police and charged with, by the Cook County State's attorney with felon in possession, aggravated use of a firearm, five counts of ag assault, and reckless discharge of firearm. Soon thereafter, the government charged Mr. Lemle with felon in possession of firearm and the state charges it for dismiss. Mr. Lemle pled guilty and at sentencing the court applied a four point enhancement of the guideline. Mr. Lemle objected. The basis of the objection was that the dismiss state charge, which formed the facts and circumstances which formed the basis of the federal charge, were used to enhance. In other words, the same charge was used twice, once as a charge, another as an enhancement. The case that I cited in the brief is United States v. SESAX, which was charged with the federal offense of conspiracy to steal firearms from a licensed dealer and there was a state charge of conspiracy to commit burglary. The court reversed the application of the 2K2 enhancement and the language was that because nearly every federal weapons offense could be simultaneously charged as a state crime, allowing the state crime to count as another felony offense renders the term superfluous. Your Honors, I think that's the situation here. That was the identical state crime, though. We've got a different state crime here. One has to do with the status offense of possession, that's the crime of conviction here, and the other offense that was used for the enhancement here is the state crime of discharging. I concur, it's not directly on point, but I think the reasoning behind SESAX should apply. In Mr. Lindley's case, this was just one singular event. Well, what is that? That's not true. Why do you say that? You can possess a gun illegally without shooting it. Well, Judge... Do you think it's normal for people who have illegal weapons to go around shooting them in the air? For me, Judge, no. I don't own a weapon. I wouldn't certainly... I'm not talking about you. I'm talking about people who own guns illegally, of whom there are millions. They still don't go around shooting their gun in the air, right? That's a particular use of a gun, which is quite different from just possessing the gun. Your Honor, in this particular case, my argument to this court, to the lower court, was looking at the time factor. Here, Mr. Lindley... I don't see what the time has to do with it. He owns this gun illegally, and he goes on a shooting spree with it. As I say, the fact that you own a gun illegally doesn't predetermine you to go shooting that with it. I wouldn't count it as a shooting spree, Your Honor. It was a New Year's celebration. He goes out and shoots one shot in the air. Exuberance. Back to the first case. Exuberance. I don't know what the rationale behind that was, sir, but in cases that follow, and it's another Justice Bauer case... It doesn't make any sense, because you're suggesting someone who has an illegal gun, you know, like millions of other people, is just as culpable as someone who, having the illegal gun, goes around shooting with it. Sir, I think in this case, we have to look at the facts and circumstances of this particular case. How these events unfolded within a very finite, limited amount of time. What does the time have to do with it? Well, I think, Judge, that was important in subsequent cases like in Purr-Foy. What, he bought the gun, and five minutes later he starts shooting with it? Is that what you're saying? No, I meant the shot went off. Well, when had he gotten the gun? Pardon me, sir? When had he gotten the gun? That, sir, I'm not sure. I don't think it was his guns. I think it was someone else's that was in the apartment that he was at on that particular New Year's Eve. So he goes out and he shoots... It wasn't his gun? I don't believe it was his gun, Judge, no. He was pretty excited about finding the gun, so he went out to see whether it worked. I don't think that was... By the way, apropos of nothing, my title is Judge, not Justice. That's okay. Thank you, sir. Thank you, Judge. He pleaded guilty to possession of it, whether he owned it or not. He possessed it. Correct. And when did that possession begin? The possession that took place on that night was on January 1, 2014. He was a felon in possession, and Judge, he was on pre-trial release for the same exact charge for another judge. My point is, Judge... When did he acquire possession of the gun? That particular gun that particular night. And he immediately took it out and started shooting? I believe it was a New Year's celebration, Judge. And then at that particular point, the police identified him, chased him, apprehended him. My point is, Judge, in other cases that this court has announced, there's been a stepping stone, a bifurcation. It's like the Purford case. That's when the Metro cops came into the person's residence with a warrant. That person, defendant, left the room, went into the bedroom, grabbed the gun, came out, and there was a 15-second standoff. Judge, I think there's these steps that occur in that particular case, and I think that's different than Mr. Lemley's case. This was a fluid situation. The police came upon him. Shots were fired. He ran, and he was apprehended. On that basis, Your Honor, I assume my time is up. I think there's a distinction where the SAVES Act should apply in cases like Purford should not apply, and I ask this matter be remanded with instructions. Thank you. Okay. Thank you, Mr. Biesenthal. Ms. Biesenthal, sorry. May it please the Court, Bethany Biesenthal for the United States. The district court did not err in applying this four-level enhancement for having possessed a firearm in connection with another felony because there were two separate felonies committed at the exact same time. The first felony was possession of the firearm, which is what Mr. Lemley was charged with having committed. The second was firing that same exact firearm into the air five times in a city alley, which constituted a second felony, reckless discharge of a firearm, which is a felony under Illinois state law. That's exactly the conduct that this enhancement is expected to punish and why the enhancement was applied, and so if there are no questions from the panel, the government would ask that you affirm the sentence of Mr. Lemley. Okay. Well, thank you very much, Ms. Biesenthal, and thank you, Mr. Biesenthal.